NATHAN J. MILLER and Others, Doing Business under the Firm Name and Style of MILLER & COMPANY, Respondents, *v.* THE STUYVESANT INSURANCE COMPANY, Appellant.

First Department, March 2, 1928.

Insurance — fire insurance — limitation in policy does not apply to appointee — plaintiffs, appointees, did not have insurable interest.

A limitation in a policy of fire insurance as to the time within which an action must be begun thereon does not apply to an appointee named in the policy, and, therefore, the plaintiffs who are appointees were not barred by the one-year limitation in the policy of insurance.

However, the plaintiffs did not have an insurable interest in the property covered by the policy, for it appears that their sole interest consisted of *pro forma* invoices against goods not then manufactured or in existence and that said invoices were for the purpose of ascertaining the amount of advances to be expected from the plaintiffs. The evidence also shows that the insured was not required to and did not turn over to the plaintiffs specific collections, but on occasions made payments to the plaintiffs on the moneys advanced, and that the property remained in the possession of the insured who exercised all rights of ownership over it.

An insurable interest must be an established ownership, possession, a lien or such equitable interest as a stockholder has in corporate property.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 7th day of June, 1927.

*Robert Kelly Prentice* of counsel [*Prentice & Townsend,* attorneys], for the appellant.

*Arnold J. Brock* of counsel [*Louis Werner,* attorney], for the respondents.

McAvoy, J. Judgment was rendered in favor of the plaintiffs in this action on a fire insurance policy. The policy was the New York-New Jersey standard form which was then in use. The assured is the Nitro Powder Corporation of New Jersey. It is not a party to the action because the suit was brought by a concern known as Miller & Company who were appointees under a loss payable clause which reads: " Loss, if any, payable to Miller & Co., as interest may appear."

The two questions which are litigated are: A question of law as to whether or not the limitation of time for suit contained in the policy is one that applied as against an appointee, and if such limitation did not apply against an appointee or mortgagee, whether or not the appointee had an insurable interest in the property destroyed or damaged by the fire.

The plaintiffs pleaded that they had down to and including the date of the fire advanced over $10,000 upon the property referred to in the policy and had an insurable interest therein to the full extent of the value of the property destroyed. There is no question of fact raised by the pleadings on the defense of the one-year limitation prescribed by the standard policy, it being alleged in the complaint that the fire occurred on the 26th of November, 1922, and the summons was not served until October 28, 1924, nearly two years thereafter.

The trial court found that the plaintiffs were not subject to the one-year limitation prescribed by the standard policy because they were not the assured, but appointees or transferees thereof, and the court found also that the plaintiffs had an insurable interest in the nature of some equitable lien for advances on goods to be manufactured which were represented by what were called *pro forma* invoices. No actual invoices could be used because no goods were manufactured nor shipped nor in existence at the time the invoices were sent to plaintiffs.

As to the limitation of time for suit on the policy the clause reads: " No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

It has been held, although the appellant says by mere dicta, not necessary to the decision, that the liability of an insurance

First Department, March, 1928.    [Vol. 223

company to the mortgagee is quite different from its liability to the owner and that the provisions of the policy with respect to presentation of proofs of loss and to the short period of limitations do not apply to a mortgagee or appointee. (*Salomon* v. *N. British & Mercantile Ins. Co.*, 150 App. Div. 728, 730.)

In *Heilbrunn* v. *German Alliance Ins. Co.*, known as the *Heilbrunn Case* (202 N. Y. 610, 611), it is suggested that in the matter of time and in the matter of performance of conditions the appointee's or mortgagee's duty differs from that of the insured and that the companies should apply to the Legislature for modification of the standard policy if the rule is harsh. It has been pointed out that, even without the mortgagee clause which provides that nothing done by the mortgagor shall invalidate the policy as to the mortgagee, the mere words, "loss, if any, payable to [another], as interest may appear," are sufficient as an indorsement to give a person having an interest other than the assured, rights distinct from the insured against the company and to absolve him from any default on the part of the mortgagor which would depend upon the mortgagor's caprice after the loss had occurred. (*McDowell* v. *St. Paul F. & M. Ins. Co.*, 207 N. Y. 482.) The court said in that opinion that it would be unreasonable after the loss had occurred that the interest of the mortgagee should be subject to the caprice of the owner and that this is equally true whether there be a mortgagee clause or merely an indorsement as in the case now here. It is the rule that none of the provisions which relate to proceedings after the liability of the company has occurred through fire apply to the mortgagee. (*Heilbrunn Case*, 202 N. Y. 610.) The very clause in the standard policy's provisions known as lines 56 to 59 indicates that the conditions applicable to a mortgagee or any person who has an interest in the subject of insurance other than the interest of the insured, are those as the clause reads, "hereinbefore contained." The limitation clause follows these lines and for this reason and others has been held not to apply to the mortgagee.

The argument of the appellant that these expressions are unsound and were not necessary to the decisions of the cases in which they are found has been considered, but we think that the rule is too clearly announced to be disregarded and that so far as the period of limitation of suit is concerned the policy may be sued upon after the year expires by an appointee or mortgagee or one having an interest other than the interest of the assured.

The plaintiffs, however, have more difficulty with the question of their insurable interest. As to the nature of such interest it was quite difficult on the argument and from the evidence to get any-

thing but a vague insinuation as to what it is, but as the varieties of insurable interest in the subject of a fire policy are limited, we can eliminate that which it is not, and, therefore, determine whether it comes within the accepted categories. An interest must be established ownership, possession, a lien or such equitable interest as a stockholder has in corporate property. Plaintiffs owned no stock in the Nitro Powder Corporation, the insured, and, therefore, was not interested in that aspect. They had no possession nor right to possession of the property insured. There was no evidence of any pledge of the property as collateral for advances. There was no lien by way of chattel mortgage. The only testimony as to any interest that plaintiffs had is the testimony of a practice between the assured and the plaintiffs which was described as the making out of *pro forma* invoices from time to time to find the amount of money that the assured would look for from time to time and that all the material of the insured on hand at the time of the fire was covered by such *pro forma* invoices. Certainly these *pro forma* invoices conveyed no title nor were they intended to be documents affecting title. If they had any such effect it would be to transfer title and this would be to make them, in effect, bills of sale and would vitiate the entire policy because of a change of ownership without the consent of the insurer. These *pro forma* invoices were not produced, not accounted for, and no proof as to their substance was made, and, therefore, can support no finding of an interest in the property.

The evidence, however, shows that the property remained in the possession of the insured and that the insured exercised all rights of ownership over it. It sold it in its own name, collected payments and did not remit specific collections to plaintiffs, but on occasions made payments to plaintiffs on the moneys which had been advanced.

The plaintiffs were not mortgagees. They were not called so in the loss payable clause. There was no mortgagee clause in the policy. The only interest they had through this policy or in the property that it covered was under the appointment or assignment of the policy in the " loss payable " clause to the extent to which the assured might be indebted to them at the time of the collection of the loss. The actual interest which plaintiffs had is described by their witness Richard Irvin: " Now those invoices were made either in view of actual orders that we had on hand, or anticipated orders, or sometimes even when we were confident of a market by the time we could manufacture the goods, we would make out the *pro forma* invoices for the reasonable amount of goods that we guessed we could make and sell, so that the goods represented by

the invoices were sometimes finished, sometimes in process, sometimes raw material to be made up."

We find that this proof shows a lack of insurable interest and that, therefore, the judgment should be reversed, with costs and judgment directed for the defendant, with costs.

DOWLING, P. J., FINCH, MARTIN and O'MALLEY, JJ., concur.

Judgment reversed, with costs, and judgment directed to be entered in favor of the defendant dismissing the complaint, with costs.